S. Hoffnung & Co., of Sydney, *v.* Chung Faa, of Honolulu.

## SUPREME COURT—IN BANCO.

### APRIL TERM—1880.

*Harris, C. J., and McCully, J.*

S. HOFFNUNG & CO., OF SYDNEY, *vs.* CHUNG FAA, OF HONOLULU.

#### ON EXCEPTIONS TO THE RULING OF THE COURT.

AN AGREEMENT BY DEFENDANT to endorse bills drawn by His Majesty the King in favor of the plaintiffs to the amount of about $8,000, when presented by Bishop & Co., in consideration of a commission of 12½ per cent. for guaranteeing the said amount, with further agreement that His Majesty will take all goods sent him by said plaintiffs, where from the facts it appears that goods of said plaintiffs to the amount of £1,106 2s. were offered to His Majesty, and were by him refused to be received, renders the defendant liable to pay for the goods so offered to His Majesty, and entitles him to the commission stipulated on said sum though no bill of His Majesty was presented for defendant's endorsement or endorsed by him; and whether said goods were taken or refused, or paid for or not paid for by His Majesty.

Opinion of the Court by McCULLY, J.

In an action of assumption the defendant, *inter alia*, claims to set off £135 5s. (being $691 25) as his commissions on £1,106 2s. for agreeing to endorse or accept bills under the following agreement:

"HONOLULU, May 2, 1877.

"This is to certify that I, Chung Faa, of the City of Honolulu, general storekeeper, do hereby agree to endorse bills to the amount of about eight thousand dollars more or less, drawn by His Majesty King Kalakaua, of the Hawaiian Islands, in favor of S. Hoffnung & Co., Sydney, Australia; and, furthermore, do agree to duly endorse the said bills on presentation

by Messrs. Bishop & Co., of the aforesaid city, in consideration
·of receiving twelve and a half per cent. for guaranteeing the
·said amount; and further agree that he will take all goods
·sent him by the said firm.      (Signed)      Chung Faa.

"Witness to signature:      (Signed)      F. A. Anderson."

The matter now for the consideration of the Court appears
from the following extract from the plaintiffs' bill of ex-
ceptions:

"On behalf of the plaintiff, F. A. Solomon testified that he
is an agent of the plaintiff, and that he was in Honolulu in
February, 1878; that at that time the goods ordered by His
Majesty had been received, but were not delivered, and the
sale not completed; that he did not see the King in person,
but did see Governor Dominis, the King's Chamberlain; the
·goods were not received by him, and in consequence the goods
were sold by the witness to H. A. Widemann; that as the
·sale to His Majesty was never consummated, no drafts were
accepted by him, and none were presented to the defendant
for his guaranty, and in fact the defendant never did guarantee
or endorse any bills for the plaintiffs."

The presiding Justice thereupon instructed the jury that,
upon the pleadings and evidence, the defendant was entitled
to the set-off claimed by him, and directed them to bring in a
verdict for the defendant; to which instructions and the. ver-
dict consequent thereon plaintiffs excepted.

Exhibit "C" is an account from the plaintiffs, dated Sydney,
September 20, 1877, crediting defendant: "By commission on
£1,106 2s., as per arrangement, £138 5s."

Castle & Hatch for plaintiffs: This was a conditional con-
tract, to become binding on the defendant on the acceptance
of the drafts. That event never happened. The sale for
which the drafts were to be payment was never completed,
the goods were never delivered, the principal never became
liable, therefore· the security never incurred liability, and is

S. Hoffnung & Co., of Sydney, v. Chung Faa, of Honolulu.

entitled to no commissions. He could only recover commissions after the sale was completed, and after his own liability attached. It is essential that there should be some one liable as principal. Not necessary that the person to whom the guarantee is given should bind himself to supply the goods. The contract would become mutual after the delivery of the goods, and until then it was inchoate, and in the power of the plaintiff to complete it or not. Citing Chitty on Contracts, pp. 20, 728 and 742; Kenneway vs. Torelawen, 5 M. and W., 498; Morton vs. Brown, A. and E., 19; Offord vs. Davis, Langdell's Select Cases on Contracts, p. 42; Smith on Contracts, p. 89.

A. S. Hartwell for defendant: By the original agreement the defendant was entitled to his commissions whether he should be called on to endorse His Majesty's acceptance or not. An agreement to endorse makes one liable precisely as if he had endorsed. An endorsement of the King's paper would make the endorser liable as an original promissor or maker of the note, or as purchaser, for the King cannot be held responsible. The consideration of the plaintiffs' agreement to pay commission was the defendant's agreement to endorse bills if presented. The defendant is not in default, and it can hardly be argued that he was to earn his commissions only on payment of the purchase money. There was no proper tender of the goods.

2. The defendant is entitled to his commissions on the ground of account stated, and credit actually given him. The plaintiff agreed to pay the defendant his commission for agreeing to endorse bills if presented. He is still liable, and will continue to be liable on that agreement if the bills should be presented. Citing Langdell's Contracts, pp. 170–79; 2 Chitty on Pleading, 32; 2 Greenl. Ed., Sec. 127; Browne's Stat. Frauds, Sec. 174; Selwyn's Nisi Prius, p. 69.

BY THE COURT.

By the last clause in the agreement the defendant was

bound that His Majesty should take all goods sent him by the plaintiffs to the extent (presumably) of $8,000. The plaintiffs could have held the defendant for the invoice in question, less his commission. Having the guarantee that their goods sent would be taken, and bills endorsed by the defendant, they rightly entered commissions to his credit, the defendant being responsible for the sale and payment. There is no doubt that if His Majesty had paid cash for the goods, the defendant would be entitled to his commission without having endorsed a bill, and without incurring risk. The agreement was in the nature of insurance, the premium of which is paid, loss or no loss. If the plaintiffs' agent saw fit to dispose of goods which had been sent to His Majesty, the sale and payment for which the defendant guaranteed to another party, he must be presumed to have done it because it was more profitable, taking into account the premium which was payable in either case. There is force in the fact that plaintiffs considered that the defendant's liability attached from the time the goods were sent to His Majesty, and credited to him then with his premium for the risk of sale which he insured from that time. It is clear that the plaintiffs held the defendant on his guarantee from that time; and if they or their agent considered it to their advantage to sell to another party, they cannot thereby deprive the defendant of his premium for the risk he had taken.

The exceptions are overruled.

Castle & Hatch for plaintiffs.

A. S. Hartwell for defendant.